**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LINDA CLAY | : | |
| 8680 Devon Hills Drive | : | |
| Fort Washington, Maryland 20744 | : | |
| | : | **COMPLAINT** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HOWARD UNIVERSITY | : | |
| 2400 Sixth Street, N.W. | : | |
| Washington, District of Columbia 20059 | : | |
| | : | |
| and | : | |
| | : | |
| JAMES "JIMMY" JONES, | : | **JURY TRIAL DEMANDED** |
| FORMER EXECUTIVE VICE | : | |
| PRESIDENT AND CABINET OFFICER | : | |
| OF HOWARD UNIVERSITY | : | |
| 14 Washington Valley Road | : | |
| Morristown, New Jersey 07960 | : | |
| | : | |
| Defendants. | : | |

……………………………………:

Plaintiff LINDA CLAY, through her attorneys, CATHARINE E. EDWARDS and

SHARON Y. EUBANKS, respectfully submits to this Court and alleges as follows:

**COMPLAINT AND NATURE OF THE CASE**

1. Plaintiff Linda Clay (hereinafter "Plaintiff" or "Ms. Clay"), a former employee of

Howard University, brings this action against Howard University ("Defendant" or "Howard")

and former Executive Vice President and Chief Human Resources Officer of Howard University

James "Jimmy" Jones (collectively, "Defendants") to redress issues of gender discrimination,

wrongful termination for whistleblowing, and retaliation against Ms. Clay related to her

employment with, termination by, and reapplication for employment with Howard University.

2.      Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (hereinafter "Title VII") and the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 (hereinafter "DCHRA") to remedy discrimination on the basis of gender, due to the differential treatment of men and women in her office.  Plaintiff also brings this action pursuant to the Federal Equal Pay Act, 29 U.S.C. §§ 206(d)(1), *et seq.* (hereinafter "EPA"), to remedy her unequal pay on the basis of her gender.

3.      Additionally, Plaintiff brings this action pursuant to Title VII's protection against employer retaliation, 42 U.S.C. § 2000e-3(a), to remedy retaliation by Defendant Howard for Plaintiff's filing of a charge of discrimination with the EEOC.   Specifically, Ms. Clay's attempt to report her claims of retaliation to Antwan Lofton, Howard University's Director of its EEO office, resulted in her demotion from the position of Senior Benefits Analyst to Human Resources ("HR") Generalist.   In addition, Defendant Howard did not adequately consider Plaintiff's timely application to fill her former position of Senior Benefits Analyst, and instead offered the position to a less qualified male applicant.  Because Ms. Clay filed a formal charge of discrimination with the EEOC, Howard University refused to re-hire her into her former position, for which she was the most qualified applicant.

4.      In addition, Plaintiff brings this action for wrongful discharge in violation of public policy, D.C. Code Ann. § 12-301(8), to remedy her wrongful constructive discharge because she refused to ignore falsified and fraudulent documents that came into her possession, when to conceal such information would have been a violation of the Howard University Code of Ethics and Conduct.

## JURISDICTION, VENUE, AND STATUTE OF LIMITATIONS

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action based on employment discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Count II); violations of the Federal Equal Pay Act, 29 U.S.C. §§ 206(d)(1), *et seq.* (Count IV); and employer retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count V);.   This Court has supplemental jurisdiction over Plaintiff's state law claims under the DCHRA (Count III) and for wrongful discharge in violation of public policy (Count I) pursuant to 28 U.S.C. § 1367.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices of which Plaintiff complains are alleged to have been committed in the judicial district of the District of Columbia.   The District of Columbia is where Plaintiff worked for Defendant Howard and where Plaintiff would presently work but for Howard's unlawful employment and hiring practices.   Venue in this Court is also proper pursuant to 31 U.S.C. § 3732(a) because at least one of the Defendants (namely, Howard University) can be found, resides, or transacts business in the District of Columbia, which is also where the discriminatory, wrongful and retaliatory acts occurred.

7.      This complaint, being filed today, is within the statutes of limitations provided by 42 U.S.C. § 2000e-5(e)(1) , D.C. CODE § 2-1402.11, and D.C. Code Ann. § 12-301(8).

## PROCEDURAL HISTORY

8.      Plaintiff filed a timely Charge of Discrimination with the EEOC on November 28, 2012 (Charge No. 570-2013-00428) and supplemented that charge with additional allegations of retaliation and gender discrimination on April 5, 2013.   On June 27, 2013, the EEOC Indianapolis Field Office issued a Notice of Right to Sue to Ms. Clay.   On September 17, 2013,

the EEOC Indianapolis Field Office issued a second Notice of Right to Sue to Ms. Clay for her supplemental claims of retaliation and gender discrimination.

## PARTIES

I.      **Plaintiff**

**Linda Clay, Former Senior Benefits Analyst and HR Generalist of Howard University**

9.      Plaintiff Linda Clay is a 50-year-old African-American female currently residing in Fort Washington, Maryland.   In January 2006, Howard University hired Ms. Clay as a Benefits Analyst in the HR department.   After receiving excellent performance reviews and taking on significant responsibility as the sole Benefits Analyst, Ms. Clay was promoted to Senior Benefits Analyst in September 2011.

10.      On March 19, 2012, Defendant Jones told Ms. Clay that her Senior Benefits Analyst position had been eliminated as part of a Reduction in Force ("RIF"), and he offered her the position of HR Generalist in a different office with different supervision.

11.      On August 6, 2012, Ms. Clay was forced to submit her resignation from the HR Generalist position due to the unendurable working conditions created by Defendants.

12.      In December 2012, Ms. Clay applied for an opening for a Senior Benefits Analyst, her previous job at Howard, which Defendant Jones told her had been eliminated as part of a RIF.   Ms. Clay was invited to interview for the position; she had her interview in early January 2013.   On or about January 14, 2013, Howard offered the position to a less qualified male applicant and gave this less qualified male an annual salary that was $14,000.00 more than what Ms. Clay received when she held the position.

## II.   Defendants

### Howard University

13.     Defendant Howard University is a private university that maintains its principal offices in Washington, District of Columbia.

14.     Howard University was established by an Act of Congress on March 2, 1867, and began operating May 1, 1867.

15.     In each year since 1928, Congress has authorized an appropriation of federal funds to aid in the construction, development, improvement, and maintenance of Howard University.

16.     In 2011, Howard University received from Congress a federal appropriation of $234,977,000.

17.     In 2012, Howard University received from Congress a federal appropriation of $234,507,000.  Federal funds were projected to support approximately 46% of the University's educational and general expenditures for fiscal year 2012, excluding the Howard University Hospital, which receives a separate federal appropriation.

### James "Jimmy" Jones, Former Executive Vice President, Chief Human Resources Officer and Cabinet Member of Howard University

18.     Defendant Jones was the Executive Vice President and Chief Human Resources Officer, and a Cabinet Member of Howard University, at the time of the discrimination and retaliation against Ms. Clay.

19.      As a member of the Howard University Cabinet and in accordance with his employment agreement with Howard University, Defendant Jones reported directly to the President of Howard University, Dr. Sidney A. Ribeau.  Defendant Jones served as a partner and trusted advisor to the President and the Cabinet.

5

20.     During his tenure at Howard University, Defendant Jones also served as Managing Partner of PRM Consulting Group, a private company that provides human resources services and has entered into numerous contracts with Defendant Howard University.

21.     While he served as Executive Vice President and Chief Human Resources Officer, Defendant Jones simultaneously managed a $500,000.00 no-bid contract between Howard University and PRM Consulting Group.

22.     Defendant Jones was released from his employment contract with Howard University in November 2012.   Defendant Jones was terminated, having violated his employment agreement.

23.     According to Defendant Jones's employment agreement, "cause" includes a breach of the agreement that is materially detrimental to Howard University; material harmful neglect or negligence in performing his duties; dishonesty or breach of fiduciary duty or other serious misconduct; or a violation of the rules, regulations, policies, or standards of the University or applicable law.

## FACTS

24.     Ms. Clay was hired by Howard University as a Benefits Analyst in the HR department in January 2006.

25.     After receiving excellent performance reviews and taking on significant responsibility as the sole Benefits Analyst, Ms. Clay was promoted to Senior Benefits Analyst in September 2011.  Her annual salary in that position was $53,000.00.

26.     Rosemarie Thompson, another HR employee working in the Benefits section, approached Ms. Clay on February 27, 2012 with several Howard University paystubs that had been delivered to her office by mistake.  The name on the paystubs was Cynthia Edwards, a

name that neither Ms. Clay nor Ms. Thompson recognized as a current or former Howard employee.

27.     Ms. Clay and Ms. Thompson realized that the employee number on the paystubs belonged to Robert Jackson, another employee in the HR department.  Ms. Clay knew Cynthia Edwards was friend of Mr. Jackson.  Given the friendship between Cynthia Edwards and Mr. Jackson, and the fact that the employee name and number did not match up, Ms. Clay was concerned that the paystubs had been improperly generated and were fraudulent.

28.     Although Ms. Clay knew that she should bring the paystubs to the attention of her supervisors, she did not feel comfortable going to her direct supervisor, David Greene, because of his close friendship with Mr. Jackson.  Previously, Ms. Clay had informed Mr. Greene that Mr. Jackson had taken several days of unreported leave, and Mr. Greene took no action to resolve the issue.  Ms. Clay knew that Mr. Greene and Mr. Jackson were close friends and had previously worked at PRM Consulting Group and that Cynthia Edwards also worked at PRM. Ms. Clay was not aware at the time that Defendant Jones was a partner at PRM.

29     As such, Ms. Clay instead reported the paystubs problem to Defendant Jones, who at the time was the head of the HR department.  Ms. Clay did not realize at the time that she reported the matter to Defendant Jones, that Defendant Jones had been a Managing Partner of PRM Consulting Group.

30.     On March 2, 2012, Ms. Clay met with Defendant Jones to discuss the possible fraud relating to the falsified paystubs that she and Ms. Thompson had discovered.

31.     During this meeting, Defendant Jones did not appear concerned about the paystubs and offered several explanations, all of which seemed extremely far-fetched.  Ms. Clay

emphasized that Cynthia Edwards did not work at Howard University, but Defendant Jones told her "[not to] do anything; I'll handle it."

32.     Ms. Clay was concerned that Defendant Jones did not intend to address the issue, and was further concerned that failing to address the potential fraud would adversely affect Howard University or implicate her in some way.  The Howard University Code of Ethics and Conduct requires the University to conduct itself with the highest degree of integrity and honesty in all of its dealings, including proper use of University resources.  Plaintiff's conduct, as well as Defendant Jones's conduct, was governed by this Code of Ethics.

33.     Therefore, Ms. Clay contacted Howard University's Internal Auditor, Carroll Little, to ensure that the falsified paystubs would be investigated.

34.     Additionally, on the advice of Valeria Stokes, Senior Director of HR, Ms. Clay contacted Antwan Lofton, the Director of Equal Employment Opportunity ("EEO") Compliance. Mr. Lofton told Ms. Clay that he wished to discuss the matter, and instructed her to follow up with him if she experienced any retaliation for reporting her discovery.

35.     Despite Ms. Clay's numerous attempts to set up a meeting with Mr. Lofton, she did not hear from him for many weeks.

36.     In February 2012, Ms. Clay was informed by her director and second level supervisor, David Greene, that she would be promoted to a position in the Leadership Academy under Dr. Stokes, which was an excellent opportunity to train for advancement at Howard.

37.     On March 7, 2012, Defendant Jones asked Ms. Clay for another copy of the paystubs, explaining that Dr. Little, the internal auditor, had asked him for them.

38.     On March 9, 2012, Defendant Jones informed Ms. Clay that his associate, Kym Wilson, would be conducting an investigation of the paystub issue.  Kym Wilson asked Ms. Clay

how she had found the paystubs, and she explained that someone had inadvertently placed them on Ms. Thompson's desk.  Defendant Jones then claimed that he had received the paystubs in the mail with a cover letter, and that they "had something to do with a mortgage," without explaining further.  He claimed that he gave the paystubs to Ms. Wilson to make copies, but that he did not know what happened to the paystubs after that.  At no point did he or Ms. Wilson take any further action to address the paystub issue.

39.     Later in the day on March 7, Dr. Stokes, who had advised Ms. Clay to report the information she had to the Director of EEO Compliance, was terminated.

40.     On March 19, 2012, Defendant Jones called Ms. Clay into his office.  He asked Ms. Clay why she had been talking to the internal auditor about the paystubs, to which she responded that she had not been satisfied with the explanations he (Defendant Jones) gave her during their March 2 meeting. Defendant Jones responded, "I need to know which side you're on."  When Ms. Clay said that she was unaware there were "sides," Defendant Jones responded, "you bet on the wrong team."  The only people she had spoken with about the paystubs issue had been Ms. Thompson, Dr. Stokes, Dr. Little and Mr. Lofton.

41.     Defendant Jones continued, saying that "we need to support each other."  Ms. Clay responded that she thought she was supporting him by bringing the paystubs to his attention.  Defendant Jones then said "what happens in Vegas, stays in Vegas."  Ms. Clay understood "Vegas" to refer to the HR Department at Howard.  Based on this conversation, it was Ms. Clay's understanding that Defendant Jones was highly displeased that Ms. Clay had involved the Internal Auditor, calling "outside" attention to the paystub issue.

42.     During that same conversation, Defendant Jones told Ms. Clay that her Senior Benefits Analyst position had been abolished as part of a RIF, and he offered her the position of

HR Generalist, claiming that it was a lateral transfer.  It was apparent that Ms. Clay had no choice but to accept the HR Generalist position or be terminated; she was not offered any other option.

43.     On March 20, 2012, Ms. Clay called Michael McFadden, the Senior Director who would be her new supervisor, to inquire about the responsibilities she would have as HR Generalist.  Mr. McFadden was surprised by Ms. Clay's reassignment, explaining that Defendant Jones had briefly mentioned the potential move, but that he did not realize it was official or that it was a full-time position.

44.     It immediately became clear that the HR Generalist position was not a lateral move, but was an effective demotion.  Mr. McFadden told Ms. Clay "I didn't know it was a full-time position, but I guess we can make it one."  The HR Generalist position had no defined responsibilities, and certainly did not have responsibilities commensurate with her previous position as Senior Benefits Analyst.

45.     Moreover, the HR Generalist job required several areas of knowledge that Ms. Clay did not possess and for which she was not offered any training.  Ms. Clay's new position, which had fewer defined duties and duties that were not in her area of expertise, was intended to retard Ms. Clay's career advancement and set her up for failure.  Moreover, the position's indefinite responsibilities and characterization by her new supervisor, Mr. McFadden, as being essentially a "part-time" position made it extremely vulnerable to elimination through a RIF.

46.     At that time, it became clear that Ms. Clay was being retaliated against for exposing the fraudulent paystubs.  She reached out via email to Mr. Lofton, who had instructed her to follow up with him if she experienced any retaliation.  Mr. Lofton replied that he would be

available for a meeting in nine days, but he never scheduled a meeting or followed up with Ms. Clay.

47.     On May 18, 2012, Ms. Thompson, who also had knowledge of the paystubs, was terminated.

48.     In early July 2012, Ms. Clay learned that both her Senior Benefits Analyst position and Ms. Thompson's position had been posted on www.indeed.com, a website that advertised open jobs, despite the fact that Defendant Jones had told Ms. Clay that her position had been abolished as part of a RIF less than four months earlier.

49.     On July 15, 2012, Marie Plummer was hired to fill the Senior Benefits Analyst position, from which Ms. Clay had been dismissed under the pretext of a RIF.  Ms. Plummer's salary for the same position was $62,000.00.  Ms. Plummer did not have Ms. Clay's PHR Certifications and had less or, at most, commensurate experience.  Ms. Plummer was hired from outside existing University staff to fill Ms. Clay's purportedly abolished position, and her annual salary was $9,000.00 more than what Ms. Clay had been paid in the same position.

50.     Due to the discrimination, hostile work environment, and retaliation she experienced as outlined above, the conditions of Ms. Clay's employment had become intolerable.  Ms. Clay therefore was forced to submit her resignation on August 6, 2013.

51.     Howard University terminated Defendant Jones in November 2012.

52.     In December 2012, Ms. Clay learned that the Senior Benefits Analyst position was being advertised on Howard University's website.  She inquired about the availability of the position with Mr. McFadden, her former supervisor who had since assumed the position of Acting Chief of Human Resources, following Defendant Jones' termination for cause the previous month.  Despite the fact that the advertisement was taken down after only three days,

Ms. Clay was able to timely apply for the position, and was invited for an interview.  After her interview, Ms. Clay was told that a decision would be made in two weeks.

53.     On January 18, 2013, a week after her interview, Ms. Clay learned that the position had been filled by Robert Jackson, the person whose employee number appeared on the fraudulent paystubs.  Mr. Jackson, a male, was not as qualified for the Senior Benefits Analyst position as Ms. Clay and, unlike Ms. Clay, had never served in the position before.  Mr. Jackson, a male, was also given an annual salary $14,000.00 more than what Ms. Clay had made in the position, despite having lesser qualifications.  Howard never followed up with Ms. Clay about the status of her application.

## COUNT I – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### D.C. Code Ann. § 12-301
(against all Defendants)

54.     Paragraphs 1 through 53 are realleged as though fully set forth herein.

55.     The law of the District of Columbia supports a claim for wrongful discharge in violation of public policy.  Because Ms. Clay was constructively discharged for her attempts to report possible illegal and clearly unethical activities, her discharge was unlawful.

56.     By a series of actions, Defendants retaliated against Ms. Clay for engaging in reporting activities as required by the Howard University Code of Ethics.  Ms. Clay reported the paystubs that she and Ms. Thompson discovered on February 27, 2012 to Defendant Jones and Howard University's internal auditor because she reasonably suspected that the paystubs were evidence of possible fraud.  The employee number on the paystubs did not match the employee name; the person named on the paystubs was not a current or former Howard employee; the person named on the paystubs was a friend of the person whose employee number appeared on

the checks.  This led Ms. Clay to reasonably believe that the falsified paystubs may have been produced for unlawful purposes.

57.     Cynthia Edwards, who was named on the paystubs, and Robert Jackson, whose employee number was on the paystubs, were both employees of PRM Consulting Group. Moreover, Defendant Jones, a Managing Partner of PRM, took no action to address the issue of falsified paystubs and instead appeared to ratify their production.  PRM had been awarded numerous contracts with Howard University, including at least one no-bid contract.  Plaintiff did not know if the paystubs indicated a misappropriation of funds and whether funds from Howard University's annual federal appropriation, were distributed in the process.  Ms. Clay was thus concerned that this conflict created serious ethical questions, if not outright violations of law.

58.     Defendants retaliated against Ms. Clay for her aforementioned conduct by removing her from her Senior Benefits Analyst position under the false pretense of a RIF, following Defendant Jones's interrogation of Ms. Clay on March 19, 2012, and constructively demoting her to the HR Generalist position, which had no defined responsibilities, no job description, and as such was highly vulnerable to a RIF action.

59.     Because of these actions, Ms. Clay ultimately was forced to resign.   This constructive discharge was wrongful because public policy, and the binding ethics code of Defendant Howard, required disclosure.

60.     Defendants are therefore liable under D.C. Code Ann. § 12-301 to provide Ms. Clay with all relief necessary to make her whole for their actions against her, which resulted in her discharge from employment at Howard.

## COUNT II – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000d, *et seq.*, as amended
(against Defendant Howard University)

61.     Paragraphs 1 through 60 are realleged as though fully set forth herein.

62.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, provides that:

    (a)    It shall be an unlawful employment practice for an employer

        (1)    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

        (2)    to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

63.     Defendant Howard engaged in unlawful employment practices prohibited by Title VII by treating Ms. Clay and other female employees in the HR department of Howard University less preferably than male employees.  Specifically, when Ms. Clay attempted to expose what appeared to be fraudulent paystubs that would have implicated male employees, Howard University, through Defendant Jones, retaliated against her by removing her from her Senior Benefits Analyst position under the pretext of a RIF.  At the same time, however, men with less experience and less tenure than Ms. Clay were protected and even promoted.

64.     More recently, two women (including Ms. Clay) and Mr. Jackson applied for the Senior Benefits Analyst opening in January 2013.  The applications of both women were disregarded, despite the fact that Ms. Clay was the most experienced and best-qualified candidate.  Instead, Howard University hired Mr. Jackson, a less qualified male who had engaged in fraudulent activity relating to the creation of false paystubs.  In fact, shortly after the paystubs came to light in March 2012, Mr. Jackson was laid off.  By hiring Mr. Jackson instead

of Ms. Clay without so much as an investigation into potential wrongdoing on his part, Howard University has turned a blind eye toward his misconduct, which should have been a disqualifying factor, given the mandatory Code of Ethics and Conduct.  Moreover, Mr. Jackson's salary is $14,000.00 greater than what Ms. Clay received in the Senior Benefits Analyst position, despite his inferior qualifications and prior misconduct at Howard.

65.     As a direct and proximate result of Defendant Howard's aforementioned conduct, Ms. Clay has suffered economic damages, mental and emotional harm, anguish, and humiliation.

66.     Defendant Howard's practices and procedures have had a disparate impact upon Ms. Clay, as a female employee, with respect to the terms and conditions of her employment. Defendant Howard's practices and procedures created a hostile work environment for Ms. Clay and for other women as well.

67.     Given the continuous nature of Defendant Howard's discriminatory conduct, which persisted throughout Ms. Clay's employment at Howard University, Ms. Clay is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

68.     By reason of Defendant Howard's discriminatory conduct, Ms. Clay is entitled to all legal and equitable remedies available under Title VII.

### COUNT III – GENDER DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT
#### D.C. Code § 2-1402.11
(against all Defendants)

69.     Paragraphs 1 through 68 are realleged as though fully set forth herein.

70.     As described above, Defendants' discrimination and constructive demotion of Ms. Clay because of her gender is in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

71.     Through their discriminatory conduct with respect to compensation and the terms and conditions of Ms. Clay's employment, Defendants deprived Ms. Clay of equal employment opportunities because of her gender in violation of D.C. Code § 2-1402.11.

## COUNT IV- VIOLATIONS OF THE FEDERAL EQUAL PAY ACT
### 29 U.S.C. § 206(d)(1), *et seq*.
(against Defendant Howard University)

72.     Paragraphs 1 through 71 are realleged as though fully set forth herein.

73.     Defendant Howard unlawfully discriminated against Ms. Clay in having compensated her in an amount less than her similarly situated male colleagues, including Mr. Jackson.

74.     Defendant Howard violated the Federal Equal Pay Act by subjecting Ms. Clay to unequal pay on the basis of her gender.

75.     Defendant Howard caused, attempted to cause, or contributed to, the continuation of salary and bonus rate discrimination in direct violation of the Federal Equal Pay Act.

76.     Defendant Howard knew of, or showed reckless disregard for, the fact that their conduct violated the Federal Equal Pay Act.

77.     As a direct result of Defendant Howard's willful, knowing, and intentional discrimination, Ms. Clay suffered harm, including, but not limited to, lost earnings.

78.     Ms. Clay is therefore entitled to all remedies available for violations of the Federal Equal Pay Act, including liquidated damages for willful violations and attorneys' fees.

## COUNT V – RETALIATION FOR FILING AN EEOC CHARGE
## IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000d, *et seq.*, as amended
(against Defendant Howard University)

79.     Paragraphs 1 through 78 are realleged as though fully set forth herein.

80.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, provides that it shall be an unlawful employment practice for an employer to "discriminate against any of his employees…because [s]he has opposed…an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

81.     By filing a formal complaint within the HR Department to the Director of EEO Compliance, as well as formal Charges of Discrimination with the EEOC, Ms. Clay availed herself of protected rights under Title VII, including, but not limited to, the right to oppose and report discriminatory behavior against her by her employer.

82.     As a result, Howard University retaliated against Ms. Clay through its decision not to rehire her for the Senior Benefits Analyst position, which it offered to a less qualified male applicant on or about January 14, 2013. At all relevant times, Howard University and Mr. McFadden were fully aware of Ms. Clay's pending EEOC discrimination charge, which was filed on November 28, 2012, and because of it, refused to rehire her.

83.     The fact that Howard University hired Mr. Jackson, the very individual whose name appeared on the paystubs that Ms. Clay brought to the attention of Defendant Jones and the University's internal auditor, over Ms. Clay, not two months after Ms. Clay filed a Charge of Discrimination with the EEOC, gives rise to an inference of unlawful retaliation.

84.     Howard University engaged in an unlawful employment practice prohibited by 42 U.S.C. § 2000e-3(a), by retaliating against Ms. Clay with respect to the terms, conditions, and/or

privileges of her employment because of her opposition to the unlawful employment practices of Howard University.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1.   Back pay, interest on the back pay, and compensation for litigation costs and reasonable attorneys' fees;

2.   Declaratory judgment that Howard University's employment policies, practices, and/or procedures challenged herein are illegal and in violation of Title VII and the District of Columbia Human Rights Act;

3.   A permanent injunction against Howard University and its officers, directors, cabinet members, employees, and/or representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, gender discrimination, and retaliation by the Defendants as set forth herein;

4.   An Order requiring Howard University to initiate and implement programs that (i) will provide equal employment opportunities for female employees; (ii) will remedy the effects of the Defendants' past and present unlawful employment policies, practices, and/or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described above;

5.   An order requiring Howard University to initiate and implement systems of assigning, training, transferring, compensating, and promoting female employees in a non-discriminatory manner;

6.   An award of back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by Plaintiff to be determined at trial;

7.  Any other appropriate equitable relief to which Plaintiff is entitled;

8.  An award of compensatory, nominal, and punitive damages to Plaintiff;

9.  Pre-judgment interest;

10.  Post-judgment interest;

11.  Such other and further relief as the Court may deem just and proper; and

12.  Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices, policies, and/or procedures complained of herein and are determined to be in full compliance with the law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated: September 25, 2013

Respectfully submitted,

*Sharon Y. Eubanks*

Sharon Y. Eubanks, District of Columbia Bar No. 420147
Catharine E. Edwards, District of Columbia Bar No. 100457

**Edwards & Eubanks, LLC**
2000 P Street NW, Suite 300
Washington, DC 20036
Office Telephone: (202) 223-2732
Cell Phone: (202) 505-3904
Email: sharon@edwardseubanks.com
          cate@edwardseubanks.com

*Counsel for Plaintiff*