## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LINDA CLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-1464 (TSC) |
| | ) | |
| HOWARD UNIVERSITY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Plaintiff Linda Clay asserts statutory and tort claims against her former employer and supervisor related to the end of her employment in the Human Resources department at Howard University. Defendants Howard University and James Jones have each moved to dismiss Clay's complaint, and Clay moved orally to amend the complaint at oral argument on the motions to dismiss on February 11, 2015. For the reasons set forth below, the Court grants Plaintiff's motion for leave to amend and grants Jones' motion to dismiss Count III against him. The Court denies without prejudice the balance of Defendants' motions to dismiss, which Defendants may renew as to Plaintiff's amended complaint.

### I.   BACKGROUND

Plaintiff, a 50-year old African-American female, joined Howard's HR department as a Benefits Analyst in January 2006. (Compl. ¶ 9). She received "excellent performance reviews" and took on "significant responsibility as the sole Benefits Analyst." (*Id.*) She was promoted to Senior Benefits Analyst in September 2011. (*Id.*) In February 2012 her direct supervisor David Greene informed Plaintiff that she would be promoted to a position in the Leadership Academy

1

under Senior HR Director Valeria Stokes. This was an "excellent opportunity to train for advancement." (*Id.* ¶ 36).

On February 27, 2012, another HR employee in the Benefits section, Rosemarie Thompson, approached Clay. Several Howard University paystubs had been delivered to Thompson's office in error. Neither Clay nor Thompson recognized the name on the paystubs, Cynthia Edwards, as that of a current or former Howard employee. The employee number on the paystubs belonged to another HR employee, Robert Jackson, who was a friend of Edwards'. (Compl. ¶¶ 26-27).

Given the friendship between Edwards and Jackson, Clay "was concerned that the paystubs had been improperly generated and were fraudulent." (Compl. ¶ 27). She elected not to report the paystubs to her direct supervisor, David Greene, based on Greene's relationship with Jackson and Edwards, all three of whom worked at PRM, a private human resources company which had "numerous contracts" with Howard. (*Id.* ¶¶ 20, 28). Instead of reporting the paystubs to Greene, Plaintiff reported them to Defendant Jones, who was then Howard's Executive Vice President and Chief Human Resources Officer. Although Plaintiff did not know it at the time, Jones was also a partner at PRM. (*Id.* ¶¶ 18, 20, 28-29).

Plaintiff and Jones met to discuss "the possible fraud relating to the falsified paystubs" on March 2, 2012. (*Id.* ¶ 30). Jones offered several "extremely far-fetched" explanations and told her he would "handle it" and she shouldn't "do anything." (*Id.* ¶ 31). Believing that Jones did not intend to address the issue, Plaintiff contacted Howard's Internal Auditor, Carroll Little and Antwon Lofton, Director of EEO Compliance. (*Id.* ¶¶ 32-34). Though Lofton encouraged Plaintiff to discuss the matter with him and to inform him of any retaliation, he did not respond to Plaintiff's attempt to set up a meeting. (*Id.* ¶¶ 34-35).

On March 7, 2012 Jones asked Plaintiff for another copy of the paystubs. (*Id.* ¶ 37). Senior HR Director Stokes, who had advised Plaintiff to report the paystubs to Lofton, was terminated that day. (*Id.* ¶ 39). Two days later Jones informed Plaintiff that his associate, Kym Wilson, would investigate the paystubs. (*Id.* ¶ 38). After Plaintiff told Wilson how she came to learn about the paystubs, Jones told Plaintiff the paystubs came in a mail with a cover letter and that they "had something to do with a mortgage." (*Id.*) On March 19, 2012, Jones called Plaintiff into his office and asked why she reported the paystubs to the internal auditor. Jones asked her which "side" she was on and told her she "bet on the wrong team." (*Id.* ¶ 40). Plaintiff understood Jones was "highly displeased" that the Internal Auditor was involved because "what happens in Vegas, stays in Vegas," referring to the HR Department. (*Id.* ¶ 41).

In this same conversation, Jones informed Plaintiff her position had been abolished as part of a Reduction in Force ("RIF"). Jones offered her an HR Generalist position, which he portrayed as a lateral transfer. Plaintiff had no choice but to accept the new position or be terminated. (*Id.* ¶ 42). When she contacted Michael McFadden, the Senior Director who would be her new supervisor, on March 20, 2012, McFadden was "surprised" to learn that the reassignment was official and for a full-time position. (*Id.* ¶ 43). The new Generalist position "had no defined responsibilities, and certainly did not have responsibilities commensurate with her previous position as Senior Benefits Analysis." (*Id.* ¶ 44). The position also "required several areas of knowledge that Ms. Clay did not possess and for which she was not offered any training." Given the patchwork of responsibilities, Plaintiff believed the "lateral transfer" was "intended to retard [her] career advancement and set her up for failure" as retaliation for her having reported the false pay stubs. (*Id.* ¶ 45). Thompson, the employee who had initially approached Plaintiff about the paystubs, was terminated on May 18, 2012. (*Id.* ¶ 47).

In early June 2012 Plaintiff's former Senior Benefits Analyst position was posted on indeed.com, a job-advertising website, and was filled on July 15, 2012. Plaintiff's female successor did not have the experience or certifications that Plaintiff did, and was paid $9,000.00 more than what Plaintiff had been paid. (Compl. ¶¶ 48, 49). By August 6, 2012,[1] "due to the discrimination, hostile work environment, and retaliation," Plaintiff's work conditions had become "intolerable" and she submitted her resignation. (*Id.* ¶ 50).

Howard terminated Jones for cause in November 2012. (*Id.* ¶ 51). In December 2012, Plaintiff learned that her former Senior Benefits Analyst position had been posted. Plaintiff submitted an application and received an interview. (*Id.* ¶ 52). One week after her interview she learned the position had been filled by Jackson, the man whose employee number appeared on the questionable paystubs. Jackson, who was not as qualified as Plaintiff, and had not served in that position before, was paid $14,000.00 more per year than Plaintiff. (*Id.* ¶ 53).

Plaintiff filed a Charge of Discrimination with the EEOC on November 28, 2012, which she supplemented on April 5, 2013. (Compl. ¶ 8). The EEOC issued a Notice of Right to Sue on June 27, 2013, supplemented with a second Notice (in response to the supplemental charge) on September 17, 2013. Plaintiff filed this lawsuit on September 25, 2013.

The lawsuit asserts five claims under federal and local law. Count I asserts a claim for wrongful discharge in violation of public policy. Counts II and III assert gender discrimination in violation of Title VII (against Howard University only) and the D.C. Human Rights Act ("DCHRA"), respectively. Plaintiff asserts a violation of the Equal Pay Act (Count IV) and a

---

[1] During oral argument, Plaintiff's counsel confirmed that Plaintiff resigned from Howard University in August 2012 (Compl. ¶ 10), not 2013. (Compl. ¶ 50).

4

claim for retaliation in violation of Title VII (Count V), both against Howard only. Jones and Howard each moved to dismiss the complaint.[2]

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013). In testing the complaint's sufficiency, a court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

---

[2] At a hearing on Defendants' motions, Howard moved alternatively for a more definite statement under Fed. R. Civ. P. 12(e).

Leave to amend a complaint should be given "freely" "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has instructed that leave should be allowed absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…[or] futility." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision on a motion for leave to amend is within the Court's discretion. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Where delay arising from amendment will prejudice defendant or is a deliberate delay tactic, denial of leave to amend is appropriate. *Appalachian Voices v. Chu*, 262 F.R.D. 24, 27-28 (D.D.C. 2009).

III.   ANALYSIS

   a. **Counts I – III: Wrongful Discharge in Violation of Public Policy, Title VII and D.C. Human Rights Act**

The tort of wrongful discharge in violation of public policy is a limited exception to the general rule in the District of Columbia that an at-will employee may be discharged "at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30, 34 (D.C. 1991).[3] Though the cause of action was initially limited only to discharge for refusal to violate the law, the D.C. Court of Appeals affirmed in *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997) that the exception was subject to further expansion. Carl was a part-time nurse at Children's Hospital who alleged she had been terminated after she advocated before the D.C. Council for patients' rights in support of a position contrary to her employer's interests. *Id.* Carl asserted that her discharge was in contravention of several public policies of the District, specifically:

---

[3] Although Howard argues that Clay's reassignment does not constitute an adverse action for purposes of Count II, for the purposes of Count I, it is undisputed that Clay was discharged.

> (1) a citizen's right to engage in political expression before the Council without fear of harassment or intimidation; (2) a professional nurse's duty to participate in the legislative process, to advocate positions of public importance on behalf of patients, and to educate the legislature so that it can make informed public policy decisions; and (3) the evidentiary rule requiring expert testimony to establish a prima facie case of negligence in a medical malpractice action.

*Id.* (footnotes omitted). The trial court dismissed, finding that *Adams* permitted a claim only for dismissal "based on the refusal to perform an illegal act." *Id.* at 161.

The D.C. Court of Appeals reversed, with a plurality of the court holding that that any expansion of the exception "must be firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." *Id.* at 162 (Terry, J.). The plurality found such an anchor in a D.C. criminal statute barring efforts to intimidate witnesses from testifying before the D.C. City Council. *Id.* at 164-65. The *Carl* opinion requires a plaintiff to make a "clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, that a new exception" is needed and that there is a "close fit between" the policy "and the conduct at issue in the allegedly wrongful termination." *Davis v. Cmty. Alternatives of Washington, D.C., Inc.*, 74 A.3d 707, 709-10 (D.C. 2013) (citing *Carl* and *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803-04 (D.C. 1999)).

Here, Plaintiff's claim relies on the general public policy against fraud. Even assuming the Court is prepared to find a firmly anchored public policy based in the illegality of fraud,[4] extension of the exception is not appropriate where a statute or regulation provides a cause of action separate and apart from the tort of wrongful discharge. *Emory v. United Air Lines, Inc.*, 821 F. Supp. 2d 200, 239 (D.D.C. 2011); *Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101,

---

[4] The Court reserves judgment on whether Plaintiff has adequately alleged a public policy basis for her claim until submission of an amended complaint.

106 (D.D.C. 2013). Applying this limiting principle, Courts have declined to recognize a valid claim for wrongful discharge where, for example, § 1983 provided a cause of action to enforce the First Amendment. *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 50 (D.D.C. 2012); *see also Mpoy v. Fenty*, 870 F. Supp. 2d 173, 185 (D.D.C. 2012) (construing plaintiff's claim liberally to assume a basis in D.C. Whistleblower Protection Act would not create a valid wrongful discharge claim where the Act already provided monetary and equitable relief). Similarly, the D.C. Court of Appeals has found that there could be no claim for wrongful discharge in violation of public policy where a cause of action for alleged discrimination was provided by the D.C. Human Rights Act or Title VII. *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000) ("Having previously concluded that MCI did not violate appellant's rights under the DCHRA, there is no room to make the argument again under *Carl*); *Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 281 (D.D.C. 2012) (anti-retaliation provisions of Title VII and DCHRA "provide their own express remedies for such misconduct and therefore cannot serve as predicates for a common law wrongful discharge claim").

Clay has alleged facts which are inextricably intertwined with her Title VII and DCHRA claims. The gravamen of her complaint is that she was punished for reporting suspected fraud while the men who participated in that fraud were not. (Compl. ¶¶ 63, 70). Given this nearly complete factual overlap, the Complaint as pleaded cannot support a claim for wrongful discharge. Because the defect may be cured by amendment, the Court will allow the plaintiff the opportunity to amend to Complaint to disentangle her statutory claims from her wrongful discharge claim, with a reminder that any claim for wrongful discharge "must be firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied upon." 702 A.2d at 162 (Terry, J.). Any prejudice to the defendants from

the slight delay in resolution of their motions to dismiss is far outweighed by improved clarity and precision of the Complaint.

### b. Jones' Individual Liability under Counts I

Defendant Jones also moves to dismiss Count I on the grounds that the cause of action exists only against Howard University and does not provide for individual liability. (Jones Mem. 4-6.)[5] Although the D.C. Court of Appeals has not addressed "whether individuals may be held personally liable for the tort of wrongful discharge in violation of public policy," (Jones Mem. 4), it has "recognized that there may be some circumstances where an individual supervisory employee can be liable for tortious interference with another employee's contractual relations with the employer." (Pl. Jones Opp'n 13) (quoting *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 269 (D.D.C. 2011)).

In *Myers,* the Court analyzed two D.C. Court of Appeals decisions before allowing plaintiff to proceed on a wrongful discharge claim against an individual supervisor. First, in *Press v. Howard Univ.*, 540 A.2d 733 (D.C. 1988) the D.C. Court of Appeals affirmed dismissal of a complaint against individual defendants for interference with plaintiff's employment contract, holding that the defendants, officers of Howard, "were acting as agents of the other party to the contract, and that the University through their actions could not tortuously interfere with its own contract." *Id.* at 736. By contrast, in *Sorells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989), the Court held that a supervisory employee who did not have the authority to terminate another employee was not a party to the employment contract and

---

[5] Jones also cites two District Court cases which he contends preclude individual liability for a wrongful discharge claim. (Jones Mem. at 4). Neither is controlling in this context. In *MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 229 (D.D.C. 2005) the plaintiff conceded his wrongful discharge claim against individual defendants, and *Newman v. Legal Servs. Corp.*, 628 F. Supp. 535, 538 (D.D.C. 1986) was decided five years before the Court of Appeals held that at-will employees could sue for wrongful discharge.

9

therefore could be liable for tortious interference when acting with malice. *Id.* at 290-91. Analyzing these two cases, the Court in *Myers* held that there were sufficient allegations in the plaintiff's complaint to infer that the individual defendants had acted with the requisite impropriety and could have been in a position more akin to the defendants in *Sorells* than in *Press*. 811 F. Supp. 2d 270.

Jones contends that, as in *Press*, he was an officer of Howard, with the authority to bind the University, and that he therefore cannot be individually liable. (Jones Mem. 5-6). This argument ignores Clay's allegations that Jones was acting improperly in his own interest, not that of Howard's. (*See* Compl. ¶¶ 40-41; Pl. Jones Opp'n at 13-14). Since the question of individual liability is particularly fact-specific, the Court will defer ruling on the merits of Jones' motion until Plaintiff has filed her amended complaint.

### c. Jones' Individual Liability Under Count III

Title VII and DCHRA claims are analyzed under the same legal standard. *Slate v. Public Defender Service for D.C.*, 31 F. Supp. 3d 277, 290 n. 3 (D.D.C. 2014); *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999). Because the Court reserves judgment as to the viability of a Title VII claim against Howard pending amendment of the complaint, it will do the same as to the DCHRA claim. However, Count III as pled against Jones must be dismissed with prejudice as time-barred.

A DCHRA claim must be filed with the D.C. Office of Human Rights or any court of competent jurisdiction within one year of the alleged conduct. D.C. Code §§ 2-1403.04, 2-1403.16. Timely filing of a complaint with the Office of Human Rights will toll the statute of limitations while the complaint is pending. D.C. Code § 2-1403.16. The parties agree that the filing of an EEOC charge automatically cross-files the charge with the Office of Human Rights

for purposes of the statute of limitations but disagree as to whether Plaintiff's charge tolled the statute as to Jones. Jones argues it did not, because the charge did not name him as a respondent. (Jones Mem. 10; Pl. Jones Opp'n 14-15).

Plaintiff relies on *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 183 (D.C. Cir. 1974) in urging the Court to view this procedural defect with leniency. The Court there reasoned that

> to expect a complainant at the administrative stage, *usually without aid of counsel*, to foresee and handle intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for procedural error, would place a burden on the complainant which Congress neither anticipated nor intended.

*Id.* (emphasis added). Unlike the plaintiff in *Evans*, Clay was represented by counsel in connection with her EEOC charges. (Jones Mem. Ex. A).

The D.C. Circuit has since clarified that although leniency cannot be used "to read out of the statute the administrative procedures with which a prospective plaintiff must comply" there may be circumstances under which "an EEOC charge and right to sue notice against one party might provide notice to another related party sufficient to satisfy the plaintiff's duty to comply with the legislatively mandated administrative prerequisites to suit." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1434 (D.C. Cir. 1988). In this District, the general rule "is that individuals not named in the EEOC charge may not be sued in a subsequent civil action unless they have been given actual notice of the EEOC proceeding or have an identity of interest with the party or parties sued before the EEOC." *E.E.O.C. v. Metzger*, 824 F. Supp. 1, 3-4 (D.D.C. 1993); *Anyaibe v. Gilbert Sec. Serv., Inc.*, No. 94-cv-2377, 1995 WL 322452, at *3-4 (D.D.C. May 18, 1995).

Here, Plaintiff's EEOC charge form identified a single "Employer" who discriminated against her, even though the form invites complainants to identify "more than one" if necessary.

11

(Jones Mem. Ex. A).[6]  Plaintiff nonetheless asserts that referencing Jones by name in her EEOC charge gave him "*actual* notice of the charges."  (Pl. Jones Opp'n 16) (emphasis in original).  But Plaintiff has not alleged any facts to plausibly suggest Jones had notice of her EEOC charge, and the argument that simply using Jones' name in the EEOC charge sufficed was recently rejected by the Court in *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 84 (D.D.C. 2014) (plaintiff who named Howard as respondent and referred extensively to Jones in the body of the EEOC charge did not toll the statute of limitations against Jones).  Indeed, since the parties agree that Jones was no longer an employee or officer of Howard at the time Plaintiff filed her EEOC charges, the inference that Jones had actual notice of, and an opportunity to participate in, the EEOC process is particularly weak.  *Frett*, 24 F. Supp. 3d at 84; *Anyaibe*, 1995 WL 322452, at *3-4.  Accordingly, the DCHRA claim against him must be dismissed as untimely.

### d. Count IV – Violation of the Equal Pay Act

The Federal Equal Pay Act ("EPA") prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees…at a rate less than the rate at which he pays wages to employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  To adequately plead an EPA violation, Plaintiff must allege facts supporting the inference that: 1) she was "doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and responsibility as jobs held by members of the opposite sex;" 2) "the job was performed under similar working conditions;" and (3) she was "paid at a lower wage than members of the opposite sex doing equal

---

[6] In considering a statute of limitations defense, the court may consider Plaintiff's EEOC charge, referenced in her complaint, without converting this motion into one for summary judgment.  *Hudson v. Children's Nat'l Med. Center*, 645 F. Supp. 2d 1, 5 n.5 (D.D.C. 2009); *Marcelus v. Corr. Corp. of Am./Am. Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008).

work." *Cornish v. District of Columbia*, No. 13-1140 (RC), 2014 WL 583637, at *10 (D.D.C. Sept. 16, 2014). Plaintiff alleges that her male successor in the Senior Benefits Analyst position was paid more than she. (Compl. ¶ 53). Howard points out that the employee who replaced Plaintiff was a female, and argues that the use of a non-immediate comparator is improper. (Howard Mem. 9-10).

The D.C. Circuit has not addressed whether relying on a non-immediate successor as a comparator is proper for purposes of the Equal Pay Act. *See Thomas v. Vilsack*, 718 F. Supp. 2d 106, 118 (D.D.C. 2010) (assuming without deciding that comparison to a successor is proper). Plaintiff relies on Eighth Circuit precedent in *Broadus v. O.K. Indus., Inc.*, 226 F.3d 937 (8th Cir. 2000). In that case, the plaintiff was the only person employed in the position, and her immediate successor had additional responsibilities. Moreover, after plaintiff left the company, the department was restructured, and no one performed substantially equal work to plaintiff until the non-immediate successor. *Id.* at 924. The Eighth Circuit held that under the circumstances of that case, the use of non-immediate successor comparators was proper. *Id.* Howard argues that these special circumstances are not present here. (Howard Mem. 9-10). During oral argument, Plaintiff suggested that, in addition to Jackson, there were other male colleagues paid more than Plaintiff during her tenure at Howard. Plaintiff may amend her complaint to include allegations of those comparators and any additional factual allegations supporting use of a non-immediate successor as comparator.

e. **Count V – Retaliation in Violation of Title VII**

To sustain a claim for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), plaintiff must show that Howard "took materially adverse action against [her] because [she] participated in protected activity." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013);

*Amiri v. Securitas Sec. Servs. USA, Inc.*, 35 F. Supp. 3d 41, 46 (D.D.C. 2014).  In the context of rehiring, plaintiff must also show that she "applied for an available job and was qualified for that position."  *Amiri*, 35 F. Supp. 3d at 46.

As with Counts II and III, Plaintiff's retaliation claim is so temporally intertwined with the other allegations in her Complaint that, as pleaded, her claims of gender discrimination, retaliation, and wrongful discharge cannot be parsed.  Accordingly, the Court will reserve judgment on the merits of Howard's motion to dismiss Count V pending submission of an amended complaint.

## IV.   CONCLUSION

Jones' motion to dismiss the Complaint is granted as to Count III of the Complaint.  The remainder of Defendants' motions to dismiss are denied without prejudice, subject to renewal upon the filing of an amended complaint and supplemental briefing.

Plaintiff's motion for leave to amend her complaint is granted.  Plaintiff shall file an amended complaint by March 24, 2015.  Plaintiff's filing shall include a redline comparison of the amended complaint against the current complaint.  Defendants shall file motions to dismiss the amended complaint by April 7, 2015.  Plaintiff shall oppose the motions by April 21, 2015 and Defendants may file reply briefs by April 28, 2015.  In considering renewed motions to dismiss the amended complaint, the Court will incorporate and consider the filings related to the previously-filed motions to dismiss; accordingly the supplemental briefing need only address new or changed allegations.

A corresponding order will issue separately.

Dated: March 11, 2015