UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA CLAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-cv-1464 (TSC) |
| | ) |
| HOWARD UNIVERSITY *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Linda Clay asserts statutory and tort claims against her former employer and supervisor, all related to the end of her employment in the Human Resources department at Howard University. Defendants Howard University and James Jones moved to dismiss Clay's complaint, and Clay moved orally to amend the complaint at argument on the motions to dismiss on February 11, 2015. In an order ("Order," ECF No. 21) and accompanying opinion ("Opinion," ECF No. 20) dated March 11, 2015 the Court granted Plaintiff's oral motion for leave to amend and granted Jones' motion to dismiss Count III of the Complaint, which alleged a violation of the D.C. Human Rights Act ("DCHRA") against him individually. The Court denied without prejudice the balance of Defendants' motions with permission to renew those motions in response to Plaintiff's amended complaint. Plaintiff filed an amended complaint, and the Defendants' renewed motions to dismiss are now before the court. Because Plaintiff has not alleged a wrongful discharge in violation of public policy but has adequately alleged violations of Title VII, the DCHRA, and the Equal Pay Act, the Court GRANTS Jones' motion in full and GRANTS IN PART and DENIES IN PART Howard's motion.

1

I. **BACKGROUND**

The factual landscape of Plaintiff's complaint is set forth in the court's March 11 opinion. The court here notes particular allegations which have changed from the original complaint. Plaintiff now alleges that she "refused to ignore falsified and fraudulent documents that came into her possession, when those documents were, and the concealment of such information would have been, a violation of federal and D.C. law," and cites specific statutes she believes may have been violated. (Am. Compl. ¶¶ 4, 29-30). She now specifically alleges that she was "concerned about her own criminal liability" as an aider and abettor of the suspected fraud if she did not report her suspicions. (Am. Compl. ¶ 61). She notes that Howard University, through its President and Directors, is required to furnish an annual financial report to Congress, and that she believed the suspected fraud might impact the truthfulness of that annual report. (Am. Compl. ¶¶ 18, 65).

The most significant defect in Plaintiff's first complaint was the entanglement of her Title VII and DCHRA claims with her wrongful discharge claim. (Opinion at 8). In her Amended Complaint, Plaintiff has re-pleaded the two sets of claims to specify that they cover separate conduct that proceeded in parallel. The wrongful discharge claim relates only to the decision to remove Plaintiff "from her Senior Benefits Analyst position under the false pretense of a [Reduction in Force]…and constructively demoting her to the HR Generalist position." (Am. Compl. ¶ 66). The gender discrimination claim brought under Title VII and the DCHRA now purports to relate to other conduct: "Throughout her employment, Ms. Clay and other females were held to higher standards, treated with less respect, and were promoted less quickly and often than their male counterparts." (Am. Compl. ¶ 71). Howard's decision not to rehire

Plaintiff for her former position is now alleged to be, in the alternative, gender discrimination or retaliation for Plaintiff's EEOC charge.  (Am. Compl. ¶¶ 72, 77, 93, 96).

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted).  Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]"  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).  If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted.  *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).  In testing the complaint's sufficiency, a court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.   ANALYSIS

In addition to the substantive arguments addressed below, Defendant Jones raises two preliminary procedural arguments. Jones first argues that the court should not consider Plaintiff's Amended Complaint because Plaintiff did not file a written motion for leave to amend. (Jones Renewed Mot. at 5-7). Jones correctly notes that it would have been within the court's discretion to deny Plaintiff the opportunity to amend because the motion was belated and was not made in writing. *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006); *Benoit v. U.S. Dep't of Agriculture*, 608 F.3d 17, 21 (D.C. Cir. 2010). In both of these cases the plaintiff made only a conditional statement that amendment could cure perceived defects; in this case, Plaintiff expressly requested "leave to amend" at oral argument. (Mot. Hr'g Tr. 60:18-61:1 Feb. 11, 2015). That the court *could* have ruled one way does not preclude the court from exercising its discretion in ruling to the contrary. The distinct and precise nature of Plaintiff's oral request for relief distinguishes it from the instances where district judges permissibly declined to grant leave to amend.

Jones also argues that some of the amended allegations are so inconsistent with the original allegations that the court should not afford them the presumption of truth. (Jones Renewed Mot. 8-10). The court does have the authority to strike obviously "false and sham" allegations that have changed from the complaint to the amended complaint. *See, e.g.*, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324-25 (Fed. Cir. 1998) (district court did not abuse discretion in striking allegations from amended complaint which directly contradicted allegations from initial complaint). "Reconcilable small variations are acceptable," but direct contradiction is not. *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013). However, Jones' argument that the changes in Plaintiff's amended complaint rise to the level of direct contradiction overstates

the changes Plaintiff has made.  Jones argues that "alleging a hypothetical possibility of 'potential' fraud is not the same now [sic] alleging that [Plaintiff] 'knew' there was fraud," and goes on to cite to particular changes in the Amended Complaint which reflect Plaintiff's increased certainty that there was indeed a fraud being perpetrated.  (Jones Renewed Reply at 11).  This change falls shy of the 180 degree change in the allegations by the Plaintiffs in *Bradley*, 136 F.3d at 1325-26 (adding a new allegation in a contract dispute that plaintiff did not receive explanation of the contract before signing it), and *Hourani*, 943 F. Supp. 2d at 171-72 (excising references to a defendant as a government agent) and does not fundamentally change the nature of Plaintiff's allegations.

Having dealt with these preliminary matters, the court proceeds to determine whether Plaintiff's Amended Complaint adequately states any claims for relief.

### a. Count I: Wrongful Discharge in Violation of Public Policy

The tort of wrongful discharge in violation of public policy is a limited exception to the general rule in the District of Columbia that an at-will employee may be discharged "at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991).  Though the cause of action was initially limited only to discharge for refusal to violate the law, the D.C. Court of Appeals affirmed in *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997) that the exception was subject to further expansion.  To state a claim for wrongful discharge in violation of public policy, the plaintiff must point to "some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution," and a "close fit between" the policy "and the conduct at issue in the allegedly wrongful termination."  *Davis v. Cmty. Alternatives of Washington, D.C., Inc.*, 74 A.3d 707, 709-

10 (D.C. 2013) (citing *Carl* and *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803-04 (D.C. 1999)).

The court invited Plaintiff to attempt to disentangle her claims under Title VII and the DCHRA from her wrongful discharge claim because, as originally pled, the allegations were too intertwined to evaluate 1) whether Plaintiff was terminated in violation of a public policy firmly anchored in the Constitution or statute, *Davis*, 74 A.3d at 709-10, and 2) whether extension of the *Carl* exception was appropriate given the apparent overlap with a pre-existing statutory cause of action. *Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 106 (D.D.C. 2013); *Emory v. United Air Lines, Inc.*, 821 F. Supp. 2d 200, 239 (D.D.C. 2011). The allegations are now sufficiently disentangled to evaluate their sufficiency.

There is limited guidance from the D.C. Court of Appeals on whether termination in retaliation for disclosing possible fraud states a claim for wrongful discharge. Applying *Carl*, the D.C. Court of Appeals has found a valid claim for wrongful discharge in violation of public policy where a cook at a retirement home was fired for attempting to prevent a co-worker from contaminating food to be served in the home. *Washington v. Guest Servs., Inc.*, 718 A.2d 1071, 1080 (D.C. 1998). Similarly, the D.C. Circuit Court agreed that a plaintiff could defeat summary judgment on evidence that the plaintiff was terminated for threatening to report unsafe handling and storage of pharmaceutical drugs, given the extensive regulations concerning food and drug safety. *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999). In both of these cases, matters of human safety were at stake, as evidenced by the comprehensive and specific regulations governing both workplaces. The D.C. Court of Appeals has also upheld a wrongful discharge claim where a director of security was terminated after cooperating with the FBI and Metropolitan Police Department in reporting a bribe. *Fingerhut*, 738 A.2d at 806-07.

In that case, the court relied on the existence of particular laws and regulations prohibiting bribery and requiring police officers to actively investigate suspected illegal activity. *Id.*

In a fourth case, the court suggested it would find a viable claim in a former law firm associate's reporting of "seriously" dishonest conduct to her superiors. *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 885 (D.C. 1998) ("If the plaintiff had alleged that she was discharged solely, or perhaps even primarily, for reporting the alteration of 'as filed' documents, and for no other reason, we would have a different case"). Key to the court's discussion in *Wallace* was the fact that the applicable rules of professional conduct required the plaintiff to report this "seriously" dishonest conduct, although the Court ultimately ruled that she could not prevail in a wrongful discharge claim because she also reported conduct which she was not obligated to report (and because the complaint implied there were other reasons for her termination beyond the whistleblowing). *Id.* Other courts of this District have looked for the same reporting mandate. *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 266-67 (D.D.C. 2011) held that allegations that plaintiff was terminated after reporting improper conflicts of interest in government contracting sufficed to state claims grounded in the public policy of encouraging reporting of problems in federal programs. The court pointed to 5 U.S.C. § 2302[1] and the Federal Acquisition Regulations which "reflect[] a clear public policy of encouraging government employees to come forward and report possible problems in federal programs" and prohibit conflicts of interest. *Id.* On the other hand, in *Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 729 F. Supp. 2d 304, 326 (D.D.C. 2010) the court held that the plaintiff failed to prove a wrongful discharge claim where none of the statutes or regulations

---

[1] 5 U.S.C. § 2302(b)(8)(B) prohibits retaliation by federal employers against employees who report suspected illegal activity.

cited by the plaintiff both a) related to the types of disclosures he actually made and b) provided any sort of whistleblower protection. *Id.*

Plaintiff correctly notes that there have been cases in which courts sustained a claim for wrongful discharge even in the absence of a mandatory reporting requirement or narrowly focused regulatory regime. (Pl. Renewed Howard Opp'n at 9 (collecting cases)). The plaintiff in *Vreven v. AARP*, 604 F. Supp. 2d 9, 14 (D.D.C. 2009), for example, was held to have stated a claim by alleging she was terminated after objecting to her employer's "abuse of its structure and tax-exempt status." And one court has gone so far as to explicitly reject the notion that the plaintiff must be subject to a mandatory disclosure regime in order to state a claim and sustained a claim for wrongful discharge in light of the policy "of prohibiting tax-exempt organizations…from using public funds for political lobbying purposes." *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 21 (D.D.C. 2002). The plaintiff in *Riggs* alleged that he was terminated after refusing to engage in activities he believed violated section 501(c)(3). 203 F. Supp. 2d at 4.[2] The trend, however, following the Supreme Court's restatement of pleading standards in *Twombly* and *Iqbal*, is towards requiring a closer fit between the public policy and the whistleblowing. *Compare Ware v. Nicklin Assocs., Inc.*, 580 F. Supp. 2d 158, 165-66

---

[2] Both *Riggs* and *Vreven* rely on a public policy protecting the integrity of taxpayer money. Plaintiff has attempted to trigger that policy by alleging that Howard receives annual appropriations of over $200 million from the federal government and that Howard is required to provide Congress with financial reports. (Am. Compl. ¶¶ 15-18). The court declines to sweep so broadly and finds the logic of *Myers*, 811 F. Supp. 2d at 266-67, to be more persuasive than that of *Riggs*, 203 F. Supp. 2d at 21, and *Vreven*, 604 F. Supp. 2d at 14. The public policy implicated in *Myers* also related to integrity in taxpayer money, but was specifically based in laws and regulations protecting whistleblowers who revealed conduct threatening that integrity. This nexus between specific policy and the conduct at issue is what the *Carl* court required. 702 A.2d at 163-165 (rejecting "expansive" and "nebulous" open standard and requiring a "close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.") (Terry, J., concurring). Plaintiff similarly argues that she was terminated in violation of the public policy that favors "the prevention of corruption in government contracting – and the necessity of allowing public officials to report corruption without fear of reprisal." (Pl. Renewed Jones Opp'n at 22 (citing *Holman v. Williams*, 436 F. Supp. 2d 68, 79 (D.D.C. 2006)). That policy is also inapplicable to the facts here. *Holman* involved allegations that a D.C. government employee was fired for threatening to publicly accuse members of the D.C. administration of violating anti-kickback laws. *Id.* The laws in question were not generally applicable anti-fraud statutes, but rather specific laws aimed at preventing a particular type of government corruption.

(D.D.C. 2008) (relying on *Conley*'s no set of facts language to permit claim that plaintiff had knowledge of a fraudulent billing and invoicing scheme and was terminated for that knowledge) with *Mpoy v. Fenty*, 870 F. Supp. 2d 173, 184-85 (D.D.C. 2012) (special education teacher alleging discharge after disclosing instructions from principal to falsify test scores had not identified clear mandate of public policy) and *Leyden v. Am. Accreditation Healthcare Comm'n*, No. 14-cv-1118, 2015 WL 1245976, at *5 (D.D.C. Mar. 18, 2015) (plaintiff alleging conflicts of interest at healthcare accreditation organization failed to identify public policy specifically prohibiting the conduct she internally reported).

As Judge Cooper of this District recently summarized, the "common denominator" in viable wrongful discharge claims is "the existence of *specific* laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained, whether or not the employer actually violated the law or regulation." *Leyden*, 2015 WL 1245976, at *5 (emphasis added). Plaintiff argues that she has identified that common denominator in her case: laws which criminalize fraud. However, the general public policy against fraud is not nearly as specific as the policies at issue in other viable wrongful discharge claims. To rest a claim of wrongful discharge on such an expansive public policy would enable the exception to swallow the rule. Therefore, the court dismisses Count I for failure to state a claim.[3]

---

[3] Because the court determines that was no sufficiently explicit and specific public policy implicated by Defendants' conduct, it does not reach Jones' additional arguments that he cannot be held individually liable for the tort of wrongful discharge and that Plaintiff's voluntary resignation was not under such intolerable conditions as to render it a constructive discharge.

### b. Counts II & III: Gender Discrimination in Violation of Title VII and the DCHRA[4]

To plead a viable discrimination claim under Title VII, the Plaintiff must allege that she 1) "suffered an adverse employment action" 2) because of her sex. *Winston v. Clough*, 712 F. Supp. 2d 1, 10 (D.D.C. 2010); *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 91-92 (D.D.C. 2010). Howard argues that Clay has failed to do so.[5]

Howard argues that reassignment, without "any decrease in compensation, job title, level of responsibility, or opportunity for promotion," does not constitute an adverse action. (Howard Mot. at 11 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007))). Howard further argues that speculation that the reassignment left Plaintiff vulnerable to a reduction in force is similarly not actionable because it is just that – speculation. *Id.*[6] Howard is correct that "purely subjective injuries, such as dissatisfaction with a reassignment," are not adverse actions. *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002).

---

[4] Title VII and DCHRA claims are analyzed under the same legal standard. *Slate v. Pub. Defender Serv. for D.C.*, 31 F. Supp. 3d 277, 290 n.3 (D.D.C. 2014); *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999). Accordingly, Counts II and III rise or fall together.

[5] Both Plaintiff and Howard have elected to rest their arguments regarding Counts II and III on the initial motion to dismiss papers. Those papers focused on whether Plaintiff's reassignment was sufficiently adverse to be actionable under Title VII. (Howard Mot. at 11; Pl. Howard Opp'n at 16). The Court notes that the Title VII/DCHRA claims has shifted since those papers were filed. Howard's motion to dismiss the gender discrimination claims addressed gender discrimination in the form of a constructive demotion under the false pretense of a RIF. Although Plaintiff's renewed opposition briefs aver that there is no overlap, the Amended Complaint still, to a more limited extent, alleges that Plaintiff's decision to resign was "due to the discrimination, hostile work environment, and retaliation she experienced." (Am. Compl. ¶ 54). To the extent the parties are assuming that the alleged constructive demotion continues to form the basis (in part) of Plaintiff's Title VII and DCHRA claims, the Court joins in that assumption for the purpose of determining whether those claims are adequately pled. Howard has not moved for dismissal on the basis that Plaintiff's amended allegations concerning disparate treatment of women and a hostile work environment are inadequately pled. Accordingly, the court does not address those issues and addresses only the question that was briefed: whether Plaintiff's reassignment constituted an adverse employment action.

[6] The citation to *Holland* concerning "speculation about the future adverse consequences of a reassignment" (Howard Mot. at 11) addressed whether plaintiff there had presented enough evidence to defeat a motion for summary judgment, 487 F.3d at 219, and is inapposite to the present motion to dismiss

However, as Plaintiff notes, there are circumstances under which even so-called lateral transfers may be adverse actions for the purposes of Title VII. As a matter of law, an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added); *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003). Howard essentially ignores allegations in the Amended Complaint that this lateral transfer did in fact involve "reassignment with significantly different responsibilities."

Plaintiff alleges that her new position "had no defined responsibilities, and certainly did not have responsibilities commensurate with her previous position." (Am. Compl. ¶ 48); *see Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (plaintiff who "mired in professional purgatory for over two years" suffered adverse employment action). She also alleges that the new position was "essentially a 'part-time' position" which "required several areas of knowledge that Ms. Clay did not possess and for which she was not offered any training." (Am. Compl. ¶ 49). Moreover, Plaintiff's allegation that she was falsely told her former position was eliminated due to a reduction in force certainly lends plausibility to the notion that her reassignment was something more than innocuous restructuring. (Am. Compl. ¶ 52). Given these allegations, Plaintiff has adequately alleged an adverse action linked to her gender.

### c. Count IV: Violation of the Equal Pay Act

The Federal Equal Pay Act ("EPA") prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees…at a rate less than the rate at which he pays wages to employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar

working conditions." 29 U.S.C. § 206(d)(1). To adequately plead an EPA violation, Plaintiff must allege facts supporting the inference that: 1) she was "doing substantially equal work on the job, the performance of which required substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex;" 2) "the job was performed under similar working conditions;" and 3) she was "paid at a lower wage than members of the opposite sex." *Cornish v. District of Columbia*, No. 13-cv-1140, 2014 WL 583637, at *10 (D.D.C. Sept. 16, 2014).

As the court noted in its previous opinion, there is scant case law addressing the use of a non-immediate successor as comparator for salary purposes, and the issue is intensely fact-specific. (Opinion at 13 (citing *Broadus v. O.K. Indus., Inc.*, 226 F.3d 937, 942 (8th Cir. 2000) (given the circumstances specific to the complaint, plaintiff could use a non-immediate successor in her position as wage comparator)). Based on statements by Plaintiff at oral argument that, in addition to Mr. Jackson, other similarly situated men were paid more than she, Plaintiff was given leave to amend her complaint to include this allegation and any other factual allegations supporting the use of a non-immediate comparator. She now alleges on information and belief that "other similarly situated males at Howard University also received more pay for the substantially similar work as Ms. Clay." (Am. Compl. ¶ 84). The complaint also specifically invokes the applicability of the *Broadus* rule by alleging that Jackson "was hired to do the same work as Ms. Clay in the position of Senior Benefits Analyst, and was paid significantly more." (Am. Compl. ¶ 84). Howard, perhaps expecting more detail, argues that Plaintiff "did not follow the Court's Order" to "add facts to support use of a non-immediate comparator as well as other examples of males" paid more than she. (Howard Renewed Mot. at 4). The court finds however, that the allegations in the Amended Complaint are sufficient to support the inference

that Plaintiff performed equal work for unequal pay, and Howard's motion to dismiss as to this count will be denied.

### d. Count V: Retaliation in Violation of Title VII

To sustain a claim for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), Plaintiff must show that Howard "took materially adverse action against [her] because [she] participated in protected activity." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013); *Amiri v. Securitas Sec. Servs. USA, Inc.*, 35 F. Supp. 3d 41, 46 (D.D.C. 2014). In the context of rehiring, Plaintiff must also show that she "applied for an available job and was qualified for that position." *Amiri*, 35 F. Supp. 3d at 46.

Howard argues both that Plaintiff has failed to plead an adverse action, (*e.g.*, Howard Mot. at 12[7] ("Plaintiff's claim of adverse employment action in the form of Howard's hiring of Mr. Jackson at a higher salary should not be considered anything more than a conclusory allegation")), and that Plaintiff has not adequately alleged the necessary causal link, (*e.g. id.* ("Plaintiff has proffered no facts other than…that she filed an EEOC claim about which Howard was aware, and that a male was selected at a higher salary after her former position was advertised for a second time")). Neither argument has merit at this stage of the litigation.

Howard's characterization of the alleged adverse action as the "hiring of Mr. Jackson at a higher salary" misses the mark. The complained-of action is Howard's decision *not* to hire Plaintiff for her former position, a decision which plainly constitutes an adverse employment action for the purposes of 42 U.S.C. § 2000e-3(a). *Nat'l Ry. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (in identifying discrete acts of discrimination for statute of limitations purposes, "failure to promote, denial of transfer, or *refusal to hire* are easy to identify")

---

[7] Howard and Plaintiff rest on the papers from the original Motion to Dismiss as it relates to Count V.

that Plaintiff performed equal work for unequal pay, and Howard's motion to dismiss as to this count will be denied.

### d. Count V: Retaliation in Violation of Title VII

To sustain a claim for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), Plaintiff must show that Howard "took materially adverse action against [her] because [she] participated in protected activity." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013); *Amiri v. Securitas Sec. Servs. USA, Inc.*, 35 F. Supp. 3d 41, 46 (D.D.C. 2014). In the context of rehiring, Plaintiff must also show that she "applied for an available job and was qualified for that position." *Amiri*, 35 F. Supp. 3d at 46.

Howard argues both that Plaintiff has failed to plead an adverse action, (*e.g.*, Howard Mot. at 12[7] ("Plaintiff's claim of adverse employment action in the form of Howard's hiring of Mr. Jackson at a higher salary should not be considered anything more than a conclusory allegation")), and that Plaintiff has not adequately alleged the necessary causal link, (*e.g. id.* ("Plaintiff has proffered no facts other than…that she filed an EEOC claim about which Howard was aware, and that a male was selected at a higher salary after her former position was advertised for a second time")). Neither argument has merit at this stage of the litigation.

Howard's characterization of the alleged adverse action as the "hiring of Mr. Jackson at a higher salary" misses the mark. The complained-of action is Howard's decision *not* to hire Plaintiff for her former position, a decision which plainly constitutes an adverse employment action for the purposes of 42 U.S.C. § 2000e-3(a). *Nat'l Ry. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (in identifying discrete acts of discrimination for statute of limitations purposes, "failure to promote, denial of transfer, or *refusal to hire* are easy to identify")

---

[7] Howard and Plaintiff rest on the papers from the original Motion to Dismiss as it relates to Count V.

(emphasis added); *see also Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 653-54 (D.C. Cir. 2003) (assuming that decision to offer position to external candidate instead of plaintiff, an internal candidate, constituted adverse action); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) ("unable to dispute that its refusal to compete the position adversely affected Cones, HHS cannot legitimately contend that it took no adverse personnel action against him"); *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 70 (D.D.C. 2011) (refusal to renew or extend term employment constituted adverse employment action); *Kangethe v. District of Columbia*, 953 F. Supp. 2d 194, 200 & n.2 (D.D.C. 2013) (refusal to promote is adverse action). The case Howard cites as support for this argument, *Gladden v. Solis*, did not address whether the complaint adequately alleged an adverse action, but rather whether or not the causal nexus had been adequately pleaded. 926 F. Supp. 2d 147, 152 (D.D.C. 2013).

  Howard's suggestion that, since Clay was invited to interview for the position, her non-hiring was not retaliatory, is not persuasive on a motion to dismiss. (Howard Mot. at 12). While the fact that Plaintiff did interview for the position may constitute evidence of a legitimate reason for Plaintiff's non-selection, the mere fact that it took place should not, at this stage, preclude Plaintiff from proceeding. To hold otherwise would enable employers to insulate themselves from retaliation claims simply by pro forma interviewing any candidate who had engaged in protected activity.

  Finally, Howard's argument that there is no causal link between the decision not to re-hire Plaintiff and Plaintiff's protected activity also fails. Plaintiff filed her first EEOC charge on November 28, 2012. (Am. Compl. ¶ 8). Jackson received the job on January 14, 2013, less than two months later. (*Id.* at ¶ 93). Temporal proximity alone can suffice to infer a causal link. *Cones*, 199 F.3d at 521. The proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273 (2001).  Many courts view *Breeden* as setting a general outer limit of a three-month gap between the protected activity and the retaliation.  *See Lowe v. District of Columbia*, 669 F. Supp. 2d 18, 28 (D.D.C. 2009) (collecting cases).  The period of less than two months at issue here comfortably falls within that window.

## IV.     CONCLUSION

Plaintiff adequately alleges that Howard discriminated against women and paid Plaintiff less than at least one male counterpart.  Plaintiff also adequately alleges that Howard retaliated against her after she filed an EEOC complaint against Howard.  Accordingly, Howard's motion is DENIED as it relates to Counts II – V of the Amended Complaint.  However, Plaintiff fails to adequately allege wrongful discharge in violation of public policy.  The Court therefore GRANTS the portion of Howard's motion seeking to dismiss Count I and GRANTS Jones' motion to dismiss in full.

A corresponding order will issue separately.

Dated: May 28, 2015